**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

DELMY LIZETH BARAHONA VARELA,

     Petitioner,

     v.                                           Case No. 2:26-cv-02335-BCL-atc

CHRISTOPHER BULLOCK,
Field Office Director of U.S. Immigration
and Customs Enforcement, New Orleans
Field Office,

     Respondent.

---

**ORDER DENYING § 2241 PETITION**

---

Petitioner Delmy Varela has filed a Petition for Habeas Corpus under 28 U.S.C. § 2241, by which she challenges her detention without a bond hearing. Doc. 1, at 2.

As a preliminary housekeeping matter, the United States Court of Appeals for the Sixth Circuit has held that the "district director"—now the Field Office Director—for the place of confinement is the proper respondent to a Section 2241 petition filed by an alien challenging his confinement. *See Roman v. Ashcroft*, 340 F.3d 314, 320–21 (6th Cir. 2003). Here, that is now Christopher Bullock, Field Office Director for the New Orleans Field Office, United States Immigration and Customs Enforcement. The Clerk is therefore **DIRECTED** to modify the docket to replace Trinity Minter with Christopher Bullock. *See* Fed. R. Civ. P. 25(d). All other respondents are **DISMISSED.**

As to the merits of the Petition for habeas corpus, the Petition (Doc. 1) is **DENIED** for the reasons that follow.

1

## BACKGROUND

Petitioner entered the United States on June 22, 2024. Doc. 1, at 3. Petitioner was paroled into the United States. *Id.* On February 11, 2026, Immigration and Customs Enforcement officers arrested Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A) and placed her in custody at the West Tennessee Detention Facility in Mason, Tennessee. *Id.* Petitioner is in removal proceedings before the Memphis Immigration Court, with her next master calendar hearing scheduled for June 1, 2026. *Id.* Petitioner has also applied for asylum under 8 U.S.C. § 1158. *Id.* Petitioner seeks release or an individualized bond hearing. *Id.* at 14.

## LEGAL STANDARD

Section 2241 authorizes a court to issue a writ of habeas corpus when an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An alien seeking to challenge her detention relating to removal proceedings may in some circumstances seek relief through a Section 2241 petition. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Section 2243 directs the judge entertaining an application for a writ of habeas corpus to "forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. The last clause of Section 2243 imposes "a duty to screen out a habeas corpus petition which should be dismissed for lack of merit on its face," as where "the necessary facts can be determined from the petition itself without need for consideration of a return." *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970).

## ANALYSIS

The Court denies the Petition. The exhaustion doctrine bars review of Petitioner's statutory claims. Moreover, Petitioner's detention without a bond hearing violates neither the Immigration and Nationality Act nor the Constitution.

### I.     Petitioner's Claims challenging application of 8 U.S.C. § 1225 fail.

#### A. The Exhaustion Doctrine bars review of Petitioner's claims to the extent they argue that Section 1225 does not apply to her.

The Supreme Court "long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). That requirement makes obvious sense when Congress requires exhaustion. It arguably makes less sense when, as in Section 2241, Congress has not done so. Perhaps the so-called prudential exhaustion doctrine—a matter of "sound judicial discretion," *id.*—can be explained as an aspect of ripeness, the idea being that there is no ripe dispute if the Executive Branch has not had its final say. Or perhaps it is a shirking of the federal courts' "virtually unflagging" duty to exercise jurisdiction in cases properly before them. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)).

In any event, both the Supreme Court and the Sixth Circuit have embraced the doctrine, which is thus binding on this Court. *See, e.g.*, *McCarthy*, 503 U.S. at 144; *see also Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013). Exhaustion gives an agency "the opportunity to correct its own mistakes with respect to the programs it administers"; "discourages disregard of the agency's procedures"; promotes efficiency because "[c]laims generally can be resolved much more quickly and economically before an agency"; and "may produce a useful record for

3

subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotation marks and citations omitted).

True, the exhaustion requirement can be excused if exhaustion would be futile. But, as the Sixth Circuit has recently explained, in determining whether exhaustion would be futile, "the crucial inquiry [is] whether the agency can provide the relief requested if the argument succeeds, not whether it is likely to succeed." *Smith v. United States Securities & Exchange Commission*, --- F.4th --, 2026 WL 850806, at *7 (6th Cir. 2026).[1] And, here, the Immigration Judge or Board of Immigration Appeals could certainly grant petitioner a bond hearing or release on bond if she were to prevail on her claims. Thus, to the extent Petitioner asserts statutory claims, they are barred by the exhaustion doctrine. However, Petitioner's constitutional claims are not barred by the exhaustion requirement because the BIA cannot adjudicate them. *Id.*; *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006).

In sum, Petitioner's statutory claims are barred by the exhaustion doctrine, and are due to be rejected for that reason alone.

**B. Under the governing statutes, Petitioner is an "applicant seeking admission" subject to mandatory detention.**

Even if they were not barred by the exhaustion doctrine, any statutory claims fail on the merits. Petitioner's statutory eligibility for a bond hearing is determined by whether her detention is governed by 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1226(a). Section 1225(b)(2) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien

---

[1] *Smith* addressed the futility exception in the context of an express exhaustion requirement that excepted situations in which "there was reasonable ground for … failure to" exhaust. *Id.* at *5 (quoting 15 U.S.C. § 78y(c)(1)). That makes no difference: There is no logical reason for treating the concept of futility differently in the context of a prudential rule than in the context of a statute with a generally worded exception that encompasses the concept of futility.

4

seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). In contrast, Section 1226(a) provides, in relevant part:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--

**(1)** may continue to detain the arrested alien; and

**(2)** may release the alien on--

> **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> **(B)** conditional parole . . . .

8 U.S.C. § 1226(a)(1)–(2). Petitioner argues that she is entitled to an individualized bond hearing. Doc. 1, at 8-9.

The Court disagrees. "Congress defined 'applicant for admission' broadly in Section 1225(a)(1) to include all 'alien[s] present in the United States who have not been admitted.'" *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 504 (5th Cir. 2026); *see* 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.").[2] That definition encompasses Petitioner because she has not been formally admitted into the United States, merely paroled. *See* Doc. 1, at

---

[2] Statutory language underscores the point in providing that "'admission'. . . mean[s], with respect to an alien, the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13) (emphasis added). Until her entry into the United States is lawful, Petitioner remains an "applicant for admission," and thus her detention during removal proceedings is mandatory under Section 1225(b)(2). *See Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *2 (8th Cir. Mar. 25, 2026).

3; *Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *4 (8th Cir. Mar. 25, 2026). The passage of time makes no difference; nor does the Government's past failure to enforce Section 1225.[3] Unless and until Petitioner is granted authorization and lawfully admitted into the United States, she remains an "applicant for admission."

Petitioner cannot avoid mandatory detention on the ground that she is not at the border and thus is not an "arriving alien." That argument fails because Section 1225(b)(2) does not use the phrase "arriving alien." Congress surely would have done so if it had intended Section 1225(b)(2) to apply only to arriving aliens, a point highlighted by Congress' use of that phrase elsewhere in Section 1225. *Buenrostro-Mendez*, 166 F.4th at 504.2.

As such, the Petitioner's detention during removal proceedings is mandatory under Section 1225(b)(2) because Petitioner is an "applicant for admission." Petitioner's challenge to that detention therefore fails.

## II.    Subjecting Petitioner to mandatory detention as required by a faithful interpretation of Section 1225 does not violate the Constitution.

Petitioner also claims that her detention without a bond hearing violates the Due Process Clause. Doc. 1, at 5–9. "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing *The Japanese Immigrant Case*, 189 U.S. 86, 100–101 (1903)). But, when a noncitizen has not been lawfully admitted to the United States, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law" because such noncitizens have "only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v.*

---

[3] Petitioner's arbitrary and capricious argument fails for this reason. Petitioner cites no authority supporting the idea that it could be arbitrary and capricious for the Executive Branch to follow a duly enacted law, simply because it had failed to follow the law in the past. *See Standard Oil v. Fitzgerald*, 86 F.2d 799, 802 (6thCir. 1936) ("'A failure to enforce the law does not change it.'" (quoting *Louisville & N. R. Co. v. United States*, 282 U.S. 740, 759 (1931)).

6

*Thuraissigiam*, 591 U.S. 103, 138, 140 (2020). This is the result of "the so-called 'entry fiction' theory of immigration law," under which "[a]liens who have not 'entered the United States within the meaning of the law,' i.e., who were never lawfully admitted and do not have leave to remain, are 'still in theory of law at the boundary line,'" *Gonzalez v. Ladwig*, No. 2:26-cv-02017-MSN-atc, 2026 WL 413602, at *11 (W.D. Tenn. 2026) (Norris, J.) (quoting *Kaplan v. Tod*, 267 U.S. 228, 230–31 (1925)), where they have only those rights provided by Congress. *See Thuraissigiam*, 591 U.S. at 140. And, here, Congress did not provide a right to a bond hearing. 8 U.S.C. § 1225(b)(2)(A).

Petitioner misplaces her reliance on *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Zadvydas* held only that principles of constitutional avoidance counseled against interpreting a statute to allow indefinite detention of an alien when the removal period had expired and there was no realistic possibility the alien would be deported. *See id.* at 685–86, 689. *Zadvydas* in no way suggests that the Constitution requires every noncitizen facing removal be given a bond hearing during the pendency of those removal proceedings, no matter how brief. *See Buenrostro-Mendez*, 166 F.4th at 508. Nor does it impose a constitutional line for when detention pending removal proceedings becomes too long.  Petitioner has cited no authority supporting the idea that only seven weeks' detention would fall on the unconstitutional side of any such line. No matter how it is viewed, this argument lacks merit.

Petitioner fares no better in invoking the equal protection component that has been incorporated into the Due Process Clause. *See Bolling v. Sharpe*, 347 U.S. 497 (1954). Petitioner asserts an as-applied challenge, contending that it is impermissibly arbitrary to treat her differently than a noncitizen who overstayed his visa. Doc. 1 at 10-11, 13-14. But courts apply an extraordinarily deferential "minimum rationality" standard in the immigration context, in

recognition of the fact that "the admission of expulsion of aliens is a fundamental sovereign attribute exercised by the Government's political branches largely immune from judicial control." *Almario v. Attorney General*, 872 F.2d 147, 150 (6th Cir. 1989) (quotation marks and citation omitted) (discussing cases and noting that immigration-related decisions may be made on bases that would violate constitutional rights in other contexts). Thus, the Court is limited to analyzing "whether the statute at issue is conceivably related to a federal interest." *Id.* at 152.  It plainly is: Section 1225 ensures that noncitizens who have not been lawfully admitted will not abscond before a decision has been made concerning whether to admit them into or remove them from the United States (which decision might itself involve an examination of the benefits and risks of both options). And there is rational reason to exempt others, like Petitioner's hypothetical visa overstayer, for whom a (temporary) admission decision has already been made and who may be more easily trackable through a visa or similar program. And that suffices on rational basis review, even if Petitioner may feel that there is no need to detain her. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 85-86 (2000) (in applying rational basis review: "Our Constitution permits States to draw lines … when they have a rational basis for doing so at a class-based level, even if it is probably not true that those reasons are valid in the majority of cases." (quotation marks omitted)).

Neither the governing statutes nor the Constitution guarantee Petitioner an individualized bond hearing in connection with removal proceedings. Those claims therefore cannot support the Petition. Accordingly, it is apparent from the application that Petitioner is not entitled to the writ. 28 U.S.C. § 2243.

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk is **DIRECTED TO CLOSE THIS CASE**.

8

**IT IS SO ORDERED**, this 7th day of April, 2026.

s/ *Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE